UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMAL LAVAN HANCOCK and LAVAN GALLERIES LLC, | ) ) ) | |
| Plaintiffs, | ) ) ) | No. 17 C 7446 |
| v. | ) ) | Judge Sara L. Ellis |
| SOTHEBY'S f/k/a SOTHEBY'S HOLDINGS INC., BENJAMIN DOLLER (Individually), SOTHEBY'S INC., and ALLAN GOTLIEB (Individually), | ) ) ) ) ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| JAMAL L. HANCOCK and LAVAN GALLERIES LLC, | ) ) ) | |
| Plaintiffs, | ) ) ) | No. 18 C 4580 |
| v. | ) ) | Judge Sara L. Ellis |
| CITY OF CHICAGO (a Municipal Corporation), CITY OF CHICAGO POLICE DEPARTMENT, DETECTIVE TIMOTHY E. CERVEN (STAR #S 5792,16759,20971), OFFICER JOHN WILLIAMS (STAR # 14475) OFFICER TRE HARDIMAN, OFFICER HARRY HOSEFOWICZ, SUPERVISING OFFICER TIMOTHY J. FLISK (STAR # 1855), SUPERVISING OFFICER KATHIE PARK (STAR # 2189), GARY METZNER (An Individual), | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

# OPINION AND ORDER

These cases are the third and fourth lawsuits in a series of litigation between Plaintiff Jamal Lavan Hancock and Defendant Sotheby's, formerly known as Sotheby's Holdings Inc. Their relationship began when Hancock reached out to Sotheby's in 2012 to inquire about selling some of his fine arts collection through the broker. On two occasions in 2012 and 2014, Hancock provided hundreds of pictures to the company's employees in the hopes that they would help broker sales for him. By February 2016, Hancock still had not received a response regarding his submissions and believed that this was in part due to racial discrimination. Hancock wrote to Defendants Benjamin Doller and Allan Gotlieb regarding his concerns. Sotheby's Holdings Inc. then sought an emergency TRO and permanent injunction in Cook County Circuit Court, alleging that Hancock had been harassing the company and its employees. The circuit court denied the TRO and Sotheby's Holdings Inc. ultimately dropped the suit.

Hancock then brought suit in federal court—these present cases are his second and third cases on these facts in front of this Court. Along with his company Lavan Galleries LLC ("Lavan Galleries"), Hancock brings claims in the second case ("*Hancock II*") against Defendants Sotheby's, Doller, Sotheby's Inc., and Gotlieb for malicious prosecution, civil conspiracy (as to Doller and Gotlieb), intentional infliction of emotional distress ("IIED"), abuse of process, conversion, and conspiracy under 42 U.S.C. § 1985(3). He also brings claims against Sotheby's and Sotheby's Inc. (collectively, "Sotheby's") for conversion, intentional misrepresentation, and fraud. In the third case ("*Hancock III*"), in addition to a variety of claims against Defendants City of Chicago, Chicago Police Department, and various individual police officers that the Court does not address in this Opinion,[1] Hancock brings substantially similar

---
[1] The *Hancock III* Defendants, other than Metzner, are briefing their motion to dismiss separately and the Court will decide their motion at the appropriate time. *See Hancock III*, Doc. 24.

claims for malicious prosecution, IIED, conspiracy under § 1985(3), and conversion against Defendant Gary Metzner.[2] The Sotheby's Defendants, with the exception of Gotlieb, move to dismiss the claims against them. Because the Court finds that Plaintiffs have not pleaded facts to support all of the elements of any of their claims, it grants the Sotheby's Defendants' motion to dismiss, with the exception that the Court finds the § 1985(3) conspiracy claim in *Hancock II* distinct from the one in *Hancock III*, and reserves ruling on the claim in *Hancock III* until the the parties have fully briefed that issue.

## BACKGROUND[3]

Hancock founded Lavan Galleries, an art gallery in Chicago, and serves as its executive director. Sotheby's is a fine arts broker with an office in Chicago, and Hancock approached it 2012 in the hopes of having it value or list his fine art collections. He made an appointment to bring in photographs of his collection and meet with Metzner, a manager. That day, he first met with Sotheby's employee Jennifer Dybsky. He provided about 400 photographs of his collection to her, and she told him that she would submit the photographs to Sotheby's fine art specialists to review. Hancock is African American and Dybsky is Caucasian, and during their meeting, Hancock believed she may have treated him disrespectfully because of his race. Specifically, she asked him if he knew if he had any contemporary art in his collection (as opposed to simply asking whether he had any contemporary art in his collection). After waiting for a while to see Metzner, who is also Caucasian, Hancock stated to Dybsky, "Perhaps I should come back with a

---

[2] The Court will refer to Sotheby's, Doller, Gotlieb, and Metzner as the "Sotheby's Defendants."

[3] The facts in the background section are taken from Plaintiffs' *Hancock II* first amended complaint [29] and exhibits attached thereto and *Hancock III* complaint [1] and exhibits attached thereto. These facts are presumed true for the purpose of resolving the Sotheby's Defendants' motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007).

3

trophy wife and a diamond ring." *Hancock II*, Doc. 29 ¶ 26. Metzner then came out of his office and informed Hancock that they would send his photos to Sotheby's New York office for authentication and get back to Hancock. He gave his business card to Hancock, and Hancock left.

By mid-August 2014, Hancock still had not heard back from Sotheby's about the photos he submitted. He contacted the Chicago office again and obtained an appointment for August 25, 2014 with Stacey Murrell. Murrell told him to photograph his entire collection and send the photos to her. Hancock then submitted about 1,500 photos to Murrell. In September 2014, Hancock called Metzner to find out the status of the 400 photos submitted in 2012 and 1,500 submitted in 2014. Metzner told him that Sotheby's was still working to determine the value of the photos.

2015 passed, and Hancock heard nothing from Sotheby's about his art collections. During the period from 2012 through 2015, Sotheby's did not publish any of the photographs that Hancock submitted—nor did it return the photos. It also never requested that Hancock stop contacting the company or its employees during that period, and it did not contact the Chicago Police to report that Hancock harassed its employees or trespassed against it.

Hancock generally alleges that he researched and observed that: (1) Sotheby's did not employ any African Americans in the position of art specialist or higher, (2) Sotheby's security personnel scrutinize African Americans more than Caucasians, (3) Sotheby's showcases Caucasian clients' collections more than African American clients' collections, and (4) Sotheby's is more likely to turn down business with African Americans who have criminal records than business with Caucasians who have criminal records. Hancock wrote an email containing his research and observations to Doller, the Executive Vice President and Chairman

of Sotheby's, on February 19, 2016. He sought "explanation as to the disparity in the treatment of African Americans and Caucasians." *Hancock II*, Doc. 29 ¶ 35. On February 20, 2016, Hancock sent a similar email to Gotlieb, the Chairman of Sotheby's Canada.

Doller and Gotlieb informed the Chicago Sotheby's office that Hancock was harassing them through email. Metzner retained off-duty police officers and, on March 2, 2016, filed a police incident report against Hancock. On March 9, 2016, Sotheby's sought an emergency TRO and permanent injunction against Hancock in Cook County Circuit Court. In pursuing the emergency TRO and permanent injunction, Sotheby's filed the case under the entity Sotheby's Holdings, even though the entity no longer existed. In Sotheby's complaint, it alleged that Hancock became "confrontational" in his interaction with Dybsky and that security noticed Hancock walk by Sotheby's Chicago office three times in one day in February 2016 (shortly after Hancock sent the emails to Doller and Gotlieb). The complaint further alleged that Hancock approached the Sotheby's Chicago office twice on March 2, 2016 and pounded on the glass, prompting security to ask Hancock to leave the premises. According to Hancock, none of these allegations are true. The circuit court denied Sotheby's motion for an emergency TRO, and Sotheby's dismissed its complaint against Hancock on June 6, 2016.

A year later, on June 17, 2017, Hancock filed a complaint in this Court against Sotheby's, some of its employees (including Metzner and Dybsky), and two off-duty police officers whom Sotheby's employed as security. *See Hancock v. Sotheby's Holdings, Inc.*, No. 17 C 4556 (N.D. Ill.) ("*Hancock I*"). Hancock alleged similar claims to those in *Hancock II*. The Court dismissed the case for lack of subject matter jurisdiction. During the pendency of *Hancock I*, Sotheby's returned 375 of Hancock's photographs to him, although Sotheby's maintains that it returned 409. Sotheby's has not yet returned the remaining photographs.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This "ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank*, 649 F.3d at 615 (citation omitted). Rule 9(b) applies to "all averments of fraud, not claims of fraud." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). "A claim that 'sounds in fraud'— in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements." *Id.*

ANALYSIS

I.  **Malicious Prosecution**

The Sotheby's Defendants[4] argue that Plaintiffs have failed to state a claim for malicious prosecution. Illinois courts tend to disfavor malicious prosecution claims, "because of the general principle that the courts should be open for litigants to settle their rights without fearing prosecution for doing so." *Indep. Plus, Inc. v. Walter*, 982 N.E.2d 860, 866, 2012 IL App (1st) 111877, 367 Ill. Dec. 710 (2012). To state a claim for malicious prosecution under Illinois law, a plaintiff must establish "(1) that the defendant brought an action against the plaintiff maliciously and without probable cause; (2) that the action was terminated in favor of the plaintiff; and (3) that 'the plaintiff suffered 'special injury' or special damage beyond the usual expense, time, or annoyance in defending a lawsuit.'" *Harmon v. Gordon*, 712 F.3d 1044, 1056 (7th Cir. 2013) (quoting *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 602 (7th Cir. 1995)). In this context, Illinois courts define "special injury" as "injury not necessarily resulting in any and all suits prosecuted to recover for like causes of action." *Indep. Plus*, 982 N.E.2d at 865 (internal quotation marks omitted). Special injury "is usually 'identified with an arrest or seizure of property or some constructive taking or interference with the person or property.'" *Serfecz*, 67 F.3d at 602 (quoting *Levin v. King*, 648 N.E.2d 1108, 1110, 271 Ill. App. 3d 728, 208 Ill. Dec. 186 (1995)).

---

[4] As an initial matter, Gotlieb has not yet appeared in this case and did not join in the other Sotheby's Defendants' motion to dismiss. However, the motion raises arguments that apply equally to all Sotheby's Defendants, and so the Court extends them to all because Hancock had an adequate opportunity to respond. *See Malak v. Associated Physicians, Inc.*, 784 F.2d 277, 280 (7th Cir. 2011) (court may *sua sponte* enter judgment in favor of additional non-moving defendants if motion by one defendant is equally effective in barring claim against other defendants and plaintiff had adequate opportunity to respond to the motion); *Roberts v. Cendent Mortg. Corp.*, No. 1:11-CV-01438-JMS, 2013 WL 2467996, at *5 (S.D. Ind. June 7, 2013) (although the defendants had not entered appearances and it was not clear if they had been served, court could impute arguments made by other defendant to all of them and dismiss claims against all defendants). For the sake of simplicity, the Court refers to the "Sotheby's Defendants" when describing the parties who filed the motion to dismiss.

7

Plaintiffs have not identified a "special injury" sufficient to satisfy that element of malicious prosecution. In their complaints, they allege that Hancock "was harmed and continues to be harmed by the false allegations and claims advanced by the Defendants . . . , and such damage includes but not limited to shame, humiliation, emotional distress, damage to Lavan Galleries business reputation [sic]." *Hancock II*, Doc. 29 ¶ 69; *Hancock III*, Doc. 1 ¶ 102. But damage to reputation, shame, humiliation, and emotional distress are all damages incidental to every lawsuit. *See Indep. Plus*, 982 N.E.2d at 867 (noting that "it is well established that injury to one's reputation 'is an unfortunate consequence of most litigation and does not constitute a special loss'" (quoting *Doyle v. Shiensky*, 458 N.E.2d 1120, 1129, 120 Ill. App. 3d 807, 76 Ill. Dec. 466 (1983))); *Petrick v Kaminski*, 386 N.E.2d 636, 638, 68 Ill. App. 3d 649, 25 Ill. Dec. 365 (1979) (finding that "claims of shame and humiliation" did not constitute special injury for the purposes of a malicious prosecution claim).

In their response brief, Plaintiffs argue that the Sotheby's Defendants' interference with his photographs constituted interference with property sufficient to allege a claim for malicious prosecution. However, the Sotheby's Defendants' possession of the photographs had nothing to do with the court proceedings that Plaintiffs complain of in their malicious prosecution claim. "[A] showing of interference with property is satisfied only if a court issues a provisional remedy such as attachment, an order of arrest or an injunction." *Serfecz*, 67 F.3d at 602 (citation omitted) (internal quotation marks omitted). The Illinois Circuit Court did not issue any provisional remedy; Sotheby's possession of the photos occurred because Hancock gave them to Sotheby's, not because Sotheby's sought a TRO and preliminary injunction. In light of this, the possession of the photos does not constitute a special injury to support this claim. Because Plaintiffs fail to allege an essential element, the Court dismisses the malicious prosecution claim

8

against the Sotheby's Defendants in both cases (Count I in *Hancock II* and Count VII in *Hancock III*).[5] In addition, because the Sotheby's Defendants' arguments apply equally to all defendants in both cases and Plaintiffs had an adequate opportunity to respond, the Court dismisses the malicious prosecution claim against the other defendants in *Hancock III* as well. *See Malak*, 784 F.2d at 280 (court may *sua sponte* enter judgment in favor of additional non-moving defendants if motion by one defendant is equally effective in barring claim against other defendants and plaintiff had adequate opportunity to respond to the motion).

## II. Intentional Infliction of Emotional Distress

The Sotheby's Defendants move to dismiss this claim on the basis that Plaintiffs fail to allege extreme and outrageous conduct or intent to cause distress. To recover for IIED, Plaintiffs must allege that "(1) defendants' conduct was extreme and outrageous; (2) defendants either intended to inflict severe emotional distress or knew that there was a high probability that their conduct would do so; and (3) defendants' conduct actually caused severe emotional distress." *Lifton v. Bd. of Educ. of City of Chicago*, 416 F.3d 571, 579 (7th Cir. 2005) (quoting *Thomas v. Fuerst*, 803 N.E.2d 619, 625, 345 Ill. App. 3d 929, 281 Ill. Dec. 215 (2004)). To be considered extreme and outrageous, the conduct "must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community." *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 438 (7th Cir. 2009) (quoting *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211, 154 Ill. 2d 1, 180 Ill. Dec. 307 (1992)).

Plaintiffs argue that the Sotheby's Defendants engaged in extreme and outrageous conduct causing Hancock emotional distress when they "allege[d] false claims that Hancock harassed, trespassed, and stalked Defendants and employees" and engaged in a "scheme [to use]

---

[5] The Sotheby's Defendants also argue that Plaintiffs' malicious prosecution claims are deficient because they fail to allege that the Sotheby's Defendants lacked probable cause or acted with malice. Because the Court finds that Plaintiffs' claim fails on other grounds, it will not address those arguments.

a nonexistent entity to prosecute Hancock." *Hancock II*, Doc. 44 at 9–10. Essentially, the basis for their IIED claim is that the Sotheby's Defendants filed a police report and lawsuit based on false allegations in order to retaliate against Hancock for the emails he wrote to Doller and Gotlieb. But false statements to police officers are not necessarily sufficient to rise to the level of extreme and outrageous conduct required to sustain an IIED claim in Illinois. *See Rusinowski v. Vill. of Hillside*, 835 F. Supp. 2d 641, 656 (N.D. Ill. 2011) (citing *Layne v. Builders Plumbing Supply Co.*, 569 N.E.2d 1104, 1108, 210 Ill. App. 3d 966, 155 Ill. Dec. 493 (1991)). *Layne* contained a similar fact pattern to the one alleged here: the plaintiff brought an IIED claim alleging that the defendant "made statements to the police that plaintiff harassed, assaulted, and verbally threatened a co-worker either with the knowledge that such statements were false or with a reckless disregard for the truth." 569 N.E.2d at 1109. The Illinois Appellate Court held that such behavior, while it may have "created some distress and embarrassment," did not meet the requirement that the conduct be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Id.* (internal quotation marks omitted). Similarly, in *Khan v. American Airlines*, the Illinois Appellate Court found that the plaintiff did not allege extreme and outrageous behavior where he alleged that the defendant provided a stolen ticket to him with the plan to entrap him, and then had the police arrest him for theft. 639 N.E.2d 210, 211, 215, 266 Ill. App. 3d 726, 203 Ill. Dec. 171 (1994), *abrogated on other grounds as recognized in Velez v. Avis Rent A Car Sys., Inc.*, 721 N.E.2d 652, 656, 308 Ill. App. 3d 923, 242 Ill. Dec. 373 (1999).

The conduct alleged here is no more outrageous than the conduct alleged in *Layne* and *Khan*. Assuming that the Sotheby's Defendants did file a police report and lawsuit based on claims they knew to be false, as the Court must, this does not rise to the level of extreme and

outrageous behavior required to sustain an IIED claim.  The police report and complaint, filed at approximately the same time, are essentially the same incident, and contain substantially similar allegations as those raised in *Layne*.  Moreover, unlike in *Khan*, the Sotheby's Defendants' statements to police did not result in the police arresting Hancock.  Although the Sotheby's Defendants' alleged conduct may have caused Hancock some distress and embarrassment, it is not extreme and outrageous enough to satisfy the requirements of an IIED claim under Illinois law, and so the Court dismisses the IIED claim against the Sotheby's Defendants in *Hancock II* and *Hancock III* (Count III in *Hancock II* and Count VIII in *Hancock III*).[6]  In addition, because the Sotheby's Defendants' arguments apply equally to all defendants in both cases and Plaintiffs had an adequate opportunity to respond, the Court dismisses the IIED claim against the other defendants in *Hancock III* as well.  *See Malak*, 784 F.2d at 280 (court may *sua sponte* enter judgment in favor of additional non-moving defendants if motion by one defendant is equally effective in barring claim against other defendants and plaintiff had adequate opportunity to respond to the motion).

### III.    Abuse of Process

The Sotheby's Defendants move to dismiss Plaintiffs' abuse of process claim because Plaintiffs have not alleged a misuse of process.  In Illinois, "[a]buse of process is defined as the misuse of the legal process to accomplish some purpose outside the scope of the process itself." *Farwell v. Senior Servs. Assocs., Inc.*, 970 N.E.2d 49, 57, 2012 IL App (2d) 110669, 361 Ill. Dec. 49 (2012).  "[A]n abuse of process claim requires proof of two elements: (1) the existence of an ulterior motive or purpose; and (2) some act in the use of legal process not proper in the

---

[6] The Sotheby's Defendants also argue that Plaintiffs have not adequately alleged that they intentionally caused emotional distress or knew that there was a high probability that their conduct would cause emotional distress.  Because the Court finds that Plaintiffs' claim fails on other grounds, it will not address those arguments.

regular prosecution of the proceedings." *McDuffie v. Loney*, No. 16 C 8860, 2017 WL 6039949, at *3 (N.D. Ill. Dec. 6, 2017) (quoting *Podolsky v. Alma Energy Corp.*, 143 F.3d 364, 372 (7th Cir. 1998)). In this context, process "is used in the literal, legal sense of something issued by the court . . . under its official seal," not "in the general sense—as in 'the legal process' of suing someone, prosecuting the case, [or] receiving judgment, etc." *Slep-Tone Entrn't Corp. v. Kalamata, Inc.*, 75 F. Supp. 3d 898, 908–09 (N.D. Ill. 2014) (alterations in original) (internal quotation marks omitted). To satisfy the second element, Plaintiffs must allege that the Sotheby's Defendants "used the court's process 'to accomplish some result beyond the purview of the process or to compel the party against whom it is used to do some collateral thing that [it] could not legally be compelled to do.'" *Id.* (alteration in original) (quoting *Kumar v. Bornstein*, 820 N.E.2d 1167, 1174–75, 354 Ill. App. 3d 159, 290 Ill. Dec. 100 (2004)).

Plaintiffs do not allege that the Sotheby's Defendants (or any Defendants, for that matter) have used a court's process to force them to do something they were not legally required to do. Commencing a lawsuit does not satisfy the second element of an abuse of process claim, *Slep-Tone*, 75 F. Supp. 3d at 909, and Plaintiffs themselves point out in their complaints that the Illinois Circuit Court denied the Sotheby's Defendants' request for a TRO, *Hancock II*, Doc. 29 ¶ 29. Because Plaintiffs do not allege an act in the use of legal process, the Court dismisses the abuse of process claim against the Sotheby's Defendants in *Hancock II* (Count IV).

## IV. Conversion

The Sotheby's Defendants seek to dismiss Plaintiffs' conversion claims on the basis that Plaintiffs have not alleged unauthorized or wrongful assumption of the photographs, that Plaintiffs have not alleged that Hancock had a right to immediate possession of the photographs, and that Plaintiffs do not allege that they demanded the Sotheby's Defendants return the

photographs. Conversion "is the unauthorized assumption of the right to possession or ownership of personal property belonging to another." *Cordes & Co. v. Mitchell Cos.*, 605 F. Supp. 2d 1015, 1024 (N.D. Ill. 2009). To state a claim for conversion in Illinois, Plaintiffs must allege (1) a right to the property at issue; (2) an "absolute and unconditional" right to the immediate possession of the property; (3) a demand for possession; and (4) that the Sotheby's Defendants wrongfully and without authorization assumed control, dominion, or ownership over the property. *Stevens v. Interactive Fin. Advisors, Inc.*, 830 F.3d 735, 738 (7th Cir. 2016).

The Sotheby's Defendants do not argue that Plaintiffs have not satisfied the first element, that Plaintiffs have a right to the photographs, but they contend that Plaintiffs have not satisfied any of the other three elements. The Court can easily dispose of the third element, whether Plaintiffs made a demand for Sotheby's to return the photograph—both complaints clearly allege that "Hancock had previously made repeated requests for Sotheby's to return the 400 photographs of his fine arts collections he submitted to its Chicago Office in 2012 and the 1,500 photographs he submitted in 2014 without success." *Hancock II*, Doc. 29 ¶ 52; *Hancock III*, Doc. 1 ¶ 50.[7]

This leaves the Court with the second and fourth elements of conversion: whether Plaintiffs have properly alleged that they have an absolute and unconditional right to immediate

---

[7] In the briefing on this matter, the parties dispute the number of photographs that Sotheby's has returned to date and whether Sotheby's returned all of the photographs that Hancock provided to it. The complaints acknowledge that Sotheby's returned 357 of the photographs in court in August 2017, but allege that the rest of the photographs are outstanding. *Hancock II*, Doc. 29 ¶¶ 53–54; *Hancock III*, Doc. 1 ¶¶ 51–52. The Sotheby's Defendants suggest that Plaintiffs are confused about the number of photographs that Hancock submitted and argue that the Court should take judicial notice that Sotheby's returned 409 photographs (which they insist is the actual number returned to Plaintiffs in August 2017) because the photographs are central to the complaints and attached to the motion to dismiss. The Sotheby's Defendants' arguments regarding this issue are inappropriate at this stage in the litigation; even if the Court took judicial notice of the photographs themselves, it would not establish that the Sotheby's Defendants returned those specific photographs, that they returned 409 photographs, or that the attached photographs were the entirety of the photographs that Hancock provided to Sotheby's. The Court must assume the facts in Plaintiffs' complaints to be true at this stage in the litigation.

possession of the property and that the Sotheby's Defendants wrongfully and without authorization assumed control, dominion, or ownership over the property. Here, Plaintiffs conversion claims fail: the facts they have alleged simply do not satisfy these elements. In both instances where the Sotheby's Defendants obtained Hancock's photographs, they obtained them because Hancock himself voluntarily provided the photographs, in the hopes that Sotheby's would consider acting as a broker in the sale of the art featured in those photographs. Despite Plaintiffs' conclusions, there are no facts to support the contention that the Sotheby's Defendants wrongfully assumed control, dominion, or ownership over the photographs. The *Hancock II* and *Hancock III* complaints do not suggest that Hancock presented the photographs with the expectation that Sotheby's would return his photographs, and Plaintiffs provide no support for their contention that Sotheby's' possession of the photographs became wrongful and unauthorized once Hancock requested the photographs back. For the purposes of the Court's analysis, this situation is the same as a prospective author giving a copy of his novel to a publisher in the hopes that it will consider publishing the book, or a salesperson providing copies of her marketing materials to someone in the hopes that that person will consider purchasing the goods she sells. In these situations, the individual or company on the receiving end cannot convert the property received because there is no expectation that the receiver will ever return the property. Under those circumstances, the individual who provided the materials cannot assert an absolute and unconditional right to immediate possession of the property; the materials become the receiver's, to review or throw away or provide to a third party as he or she sees fit. For these same reasons, it is impossible to satisfy the wrongful and unauthorized control, dominion, or ownership element of conversion in these situations. Plaintiffs' failure to satisfy these elements dooms their conversion claims. Thus, the Court dismisses the conversion claims

14

against the Sotheby's Defendants in *Hancock II* and *Hancock III* (Count V in *Hancock II* and Count IX in *Hancock III*).

## V.    Intentional Misrepresentation and Fraud

Sotheby's challenges Plaintiffs' claims of intentional misrepresentation and fraud arguing that Plaintiffs have not pleaded facts that plausibly support their claims that the Sotheby's employees (Dybsky and Murrell) knew their statements were false and that Plaintiffs do not allege that the Sotheby's employees intended to induce Hancock to act.[8]  As an initial note, "intentional misrepresentation" is just another name for fraud under Illinois law.  *Abazari v. Rosalind Franklin Univ. of Med. & Science*, 40 N.E.3d 264, 270, 2015 IL App (2d) 140952, 396 Ill. Dec. 611 (2015).  To establish a fraud claim in Illinois, Plaintiffs must allege: "(1) a false statement of fact by the defendant[;] (2) made with the knowledge that the statement was false; (3) the defendant intended that the statement would induce the plaintiff to act; (4) the plaintiff justifiably relied upon the statement; and (5) the plaintiff suffered damages arising from that reliance."  *Id.*; *see also Squires-Cannon v. Forest Pres. Dist. of Cook Cty.*, 897 F.3d 797, 805 (7th Cir. 2018).

Looking to the amended complaint in *Hancock II*, Plaintiffs have not identified what action Dybsky and Murrell tried to induce Hancock to take as a result of their misrepresentations.  The facts in the amended complaint reveal that Hancock pursued Sotheby's, not the other way around; he sought the two appointments with employees at Sotheby's so that he could submit photographs of his art collection.  Dybsky and Murrell then falsely informed him that they would have Sotheby's fine arts specialists review the photographs.  However, the amended complaint

---

[8] Sotheby's also questions Plaintiffs' ability to establish damages in their reply brief.  *See Hancock II*, Doc. 46 at 11.  However, because they did not raise the issue in their initial brief, the Court will not address this argument.  *See Dexia Credit Local v. Rogan*, 629 F.3d 612, 625 (7th Cir. 2010) ("[A]rguments raised for the first time in a reply brief are waived.").

does not directly reference what action Dybsky and Murrell intended to induce Hancock to take, and Plaintiffs' response entirely avoids this element. By failing to respond to the Sotheby's Defendants' arguments, Plaintiffs have waived the issue. *See Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012) (holding that a party waives an argument if it is "underdeveloped, conclusory, or unsupported by law"); *TinleySparks, Inc. v. Vill. of Tinley Park*, 181 F. Supp. 3d 548, 561 (N.D. Ill. 2015) (same). Aside from waiver, Plaintiffs' complaint does not satisfy the intentional inducement element. While Plaintiffs do allege that "Defendants intended Hancock to rely on their deception," *Hancock II*, Doc. 29 ¶ 129, they never actually specify what that reliance is. Especially in light of the heightened pleading requirement for fraud, the lack of clarity regarding what action the Sotheby's employees could have intended to induce renders the claims insufficient. Moreover, if Sotheby's did not intend to do business with Plaintiffs, as Plaintiffs allege, Plaintiffs have left a gaping plausibility question in these claims: why would Dybsky and Murrell intend to induce any action by Hancock that would result in continued interactions with him? Not only are Plaintiffs missing a necessary element to establish a fraud claim, but they also have failed to state a claim that is facially plausible. *Iqbal*, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). Because Plaintiffs have failed to adequately allege that Sotheby's intended to induce an action, the Court dismisses Counts VII and VIII in *Hancock II*.[9]

---

[9] Because the Court has found Plaintiffs' fraud claims deficient on other grounds, it does not address Sotheby's' argument that they have not plausibly alleged that Sotheby's employees knew their statements were false at the time they made the statements.

16

## VI. Civil Conspiracy

The Sotheby's Defendants also move to dismiss Plaintiffs' civil conspiracy claim, arguing that Plaintiffs have neither alleged a conspiratorial agreement nor a tortious act performed in furtherance of the alleged agreement. To establish a claim for civil conspiracy in Illinois, a plaintiff must plead: "(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that cause an injury to the plaintiff." *Borsellino*, 477 F.3d at 509 (citing *McClure v. Owens Corning Fiberglass Corp.*, 720 N.E.2d 242, 258, 188 Ill.2d 102, 241 Ill. Dec. 787 (1999)).

Plaintiffs' civil conspiracy allegations are premised on a theory that Doller and Gottlieb, upon receiving Hancock's complaints via email, contacted Metzner and either instructed him to or acquiesced to "an elaborate conspiracy to retaliate against Hancock and completely keep him away from Defendants' Chicago Office for good" by filing the lawsuit in Illinois Circuit Court against him. *Hancock II*, Doc. 29 at 17. However, the Court has previously found that Plaintiffs have failed to state a claim for any of the torts they allege regarding the lawsuit in Illinois Circuit Court (malicious prosecution, IIED, and abuse of process). "It is well settled in Illinois that conspiracy does not of itself constitute an actionable wrong. Instead, conspiracy becomes actionable only when the underlying conduct which is the subject of the conspiracy is independently tortious." *Ablan v. Bank of Am. Corp.*, 665 F. App'x 544, 545 (7th Cir. 2016) (quoting *Champion Parts, Inc. v. Oppenheimer & Co.*, 878 F.2d 1003, 1008 (7th Cir. 1989)). Because Plaintiffs' underlying tort claims fail, so does their civil conspiracy claim. The Court dismisses Count II in *Hancock II*. [10]

---

[10] Because the Court finds that Plaintiffs' claim fails on other grounds, it does not address the Sotheby's Defendants' argument that Plaintiffs have not sufficiently alleged a conspiratorial agreement.

## VII. Conspiracy under 42 U.S.C. § 1985(3)

Finally, the Sotheby's Defendants move to dismiss Plaintiffs' claims for conspiracy under 42 U.S.C. § 1985(3), contending that Plaintiffs fail to allege discriminatory animus or deprivation of any federally-protected right. To prevail on a conspiracy claim under § 1985(3), a plaintiff must allege "(1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of equal protection of the laws, (3) an act in furtherance of a conspiracy, and (4) an injury to a person or property or a deprivation of a right or privilege granted to U.S. citizens." *Green v. Benden*, 281 F.3d 661, 665 (7th Cir. 2002). Additionally, the plaintiff must show that the defendants acted out of some "class-based, invidiously discriminatory animus" and that the rights with which defendants have interfered are protected against private encroachment. *Id.*

Plaintiffs' § 1985(3) conspiracy claims fail for similar reasons that their civil conspiracy claim fails: they have not pleaded an underlying violation, this time of their federally-protected rights. "[T]he absence of any underlying violation of Plaintiff[s'] rights precludes the possibility of Plaintiff[s] succeeding on a conspiracy claim." *Sow v. Fortville Police Dep't*, 636 F.3d 293, 305 (7th Cir. 2010). Plaintiffs simply do not allege that the Sotheby's Defendants violated any of their federally-protected rights, beyond conclusory statements that they "directly deprived Hancock [of] equal privileges and immunities under the laws." *Hancock II*, Doc. 44 at 14. However, Plaintiffs do not specify the laws to which they are referring, and without this element of the claim, they cannot prevail under § 1985(3). Thus, the Court dismisses Plaintiffs' § 1985(3) conspiracy claims against the Sotheby's Defendants in *Hancock II* (Count VI).[11] However, unlike the other copied claims in *Hancock III*, Plaintiffs' § 1985(3) claim there alleges

---

[11] Because the Court finds that Plaintiffs' claim fails on other grounds, it does not address the Sotheby's Defendants' argument that Plaintiffs have not sufficiently alleged discriminatory animus.

a conspiracy distinct from the one alleged in *Hancock II* (although the two are of course related to the same issues). The allegations are distinct enough to merit separate briefing on the specifics of Count X in *Hancock III*. The Court reserves ruling on this matter in *Hancock III* until it rules on the other motions to dismiss pending in that case.

**VIII. Dismissal with Prejudice**

The Sotheby's Defendants ask that the Court dismiss the claims against them with prejudice. Although courts typically grant leave to amend liberally, the Court may divert from this general rule where amendment would be futile. *Hongbo Han v. United Cont'l Holdings, Inc.*, 762 F.3d 598, 603 (7th Cir. 2014). Amendment of Plaintiffs' claims for malicious prosecution, IIED, abuse of process, conversion, civil conspiracy, and conspiracy under § 1985(3) would be futile here because the claims simply do not fit the events of which Plaintiffs complain—their injuries are not special injuries required to state a claim for malicious prosecution, courts have found that the actions of which Plaintiffs complain are not sufficient to constitute IIED, the process of which they complain is not the type of process contemplated by an abuse of process claim, and they cannot establish a conversion claim for the situation they describe. Regarding the claims of conspiracy, because amendment of the torts upon which conspiracy could be based would be futile, amendment of the civil conspiracy claim would be futile as well. And because Plaintiffs cannot allege that the Sotheby's Defendants' actions violated their federally-protected rights, amendment of the conspiracy claim pursuant to § 1985(3) would also be futile.

The Court further notes that this is not Plaintiffs' first bite of the apple—they filed similar claims in *Hancock I*, which this Court dismissed, and they have already amended the complaint in *Hancock II* once. Moreover, they added to their claims with the filing of *Hancock III*.

19

Plaintiffs' decision to repeatedly file new litigation, rather than seek to amend their existing complaints, has bounced the case among various courts in this district and resulted in further delay. At this point in the proceedings, Plaintiffs have had sufficient opportunity to plead their claims and have failed to do so. *See Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007) ("Reasons for finding that leave [to amend] should not be granted include 'undue delay, bad faith or dilatory motive on the part of the movant, *repeated failure to cure deficiencies by amendments previously allowed*, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment . . .[.]" (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1972))). Thus, the Court dismisses the entirety of the claims in *Hancock II* and Counts VII, VIII, and IX in *Hancock III* with prejudice.

## CONCLUSION

For the foregoing reasons, the Court grants the Sotheby's Defendants' motion to dismiss [32], with the exception that it reserves ruling on Count X in *Hancock III*. The Court dismisses Plaintiffs' amended complaint in *Hancock II* (17 C 7446) [29] with prejudice and terminates that case. In addition, the Court dismisses Counts VII, VIII, and IX in the complaint in *Hancock III* (18 C 4580) [1] with prejudice.

Dated: December 20, 2018

SARA L. ELLIS
United States District Judge